A. PETER RAUSCH, JR. (SBN 127930)
JOSEPH FERRARO (SBN 230625)
JENNIFER YOUNG (SBN 300157)
LAW OFFICES OF A. PETER RAUSCH, JR.
1930 Tienda Drive, Suite 106
Lodi, California 95242
Telephone: (209) 339-8500
Facsimile: (209) 339-8505
Email: counsel@rausch.com

Attorneys for Plaintiffs,
Jain Irrigation, Inc.,
Agri-Valley Irrigation, LLC, and
Irrigation Design & Construction, LLC

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

#### FRESNO DIVISION

| | |
|---|---|
| JAIN IRRIGATION, INC.  a Delaware Corporation; AGRI-VALLEY IRRIGATION, LLC, a Delaware Limited Liability Company; IRRIGATION DESIGN & CONSTRUCTION, LLC, a Delaware Limited Liability Company;<br><br>Plaintiffs,<br><br>v.<br><br>NETAFIM IRRIGATION, INC., a New York Corporation;<br><br>Defendant. | Case No.: 1:18-CV-01331-DAD-BAM<br><br>**FIRST AMENDED COMPLAINT OF JAIN IRRIGATION, INC., AGRI-VALLEY IRRIGATION, LLC, AND IRRIGATION DESIGN & CONSTRUCTION, LLC**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, JAIN IRRIGATION, INC.  a Delaware Corporation; AGRI-VALLEY IRRIGATION, LLC, a Delaware Limited Liability Company; IRRIGATION DESIGN & CONSTRUCTION, LLC, a Delaware Limited Liability Company; as and for their claims against Defendant, NETAFIM IRRIGATION, INC., a New York Corporation, respectfully allege as follows:

1

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

**THE JURISDICTION OF THE COURT**

1.    This is an action for damages, injunctive and other relief arising out of Defendants' unlawful agreements in restraint of trade, namely, group boycotts and collective refusals to deal, in violation of the Sherman Antitrust Act (15 U.S.C. § 1), the Clayton Act (15 U.S.C. §§ 14 et seq.), California's Cartwright Act (California Business & Professions Code §§ 16700 et seq.) and common law.

2.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1337 because the claims arise under Acts of Congress protecting trade or commerce against restraints or monopolies, and supplemental jurisdiction over the state and common law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.    Venue is proper in this district and in this division pursuant to 15 U.S.C. § 22 because the Defendant corporation is an inhabitant of this district and transacts business in this district and can be found here, and under 18 U.S.C. § 1391 because a defendant resides in this district and because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred here.

**INTRODUCTION AND SUMMARY OF CASE**

4.    California's San Joaquin Valley stretches from Sacramento in the north to Bakersfield in the south and from various California coastal ranges in the west to the Sierra Nevada in the east.  The Valley comprises approximately 18,000 square miles, 11% of California's total land area.  The land is commonly regarded as the most fertile and productive agricultural real estate in the world and has been called "The Food Basket of the World" for the diversity of its produce.  The Valley produces the majority of the 12.8 % of United States agricultural production that comes from California.  Because the Valley is essentially a desert, frequently plagued by drought, an extensive aqueduct infrastructure and a system of reservoirs and canals has been developed to deliver water into this fertile landscape.  That water is then delivered to more than 7 million areas of land farmed by thousands of end-user agricultural businesses through a network of grower-based irrigation systems engineered, designed, constructed, installed and maintained by independent design and construction firms, each of which acquires

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

component parts for those systems, namely: trip tape, tubing, sprinklers, valves, filters, tanks and pumps, from various product manufacturers.  These design and installation companies, commonly referred to as "dealers" or distributors," are independent dealer/distributors in the sense that they do not represent or sell exclusively the products of a single manufacturer.  Instead they design systems based on their customer's requirements, requests and needs and they buy and utilize the manufactured parts and components selected from any or all of the product manufacturing sources, depending on each project's requirements and preferences of their customers.

5.    The ability of end-user agricultural consumers (growers and farmers) to choose from multiple dealer/distributor options, and the ability of those dealer/distributors to choose from multiple manufacturing sources for customer-specified component products yields a healthy competitive business environment that conducts millions of dollars of economic activity annually in the San Joaquin Valley and along the California Central Coast.

6.    In this case, multiple manufacturers, simultaneously and through concerted efforts, began to boycott the Plaintiff dealer/distributors and to coerce, facilitate, influence and conspire with other dealers/distributors to boycott the products made by the Plaintiff manufacturer.  As a result, the choices available to the end-user agricultural farming enterprises are diminished and competition at both the manufacture level and the dealer/distributor level is necessarily adversely lessened.  This case arises because Defendant Netafim Irrigation, Inc., spearheaded, organized and facilitated a concerted refusal to deal and group boycott, by agreement among competing manufacturers and competing dealer/distributors, to drive the rival Plaintiffs from their field of business by denying them access to customers and their customary sources of supply.[1]

7.    The relevant geographic market impacted by the claims asserted in this action is the California San Joaquin Valley and California Central Coast area.  The relevant product market is commercial drip irrigation and micro-irrigation systems and their components sold to growers and farmers in the relevant geographical market.  Plaintiffs estimate the relevant product market to be worth

---

[1] Plaintiffs have named only Netafim as a defendant because it is clear that Netafim was the ringleader of this per se unlawful conspiracy.  Plaintiffs reserve the right to request further amendment of this First Amended Complaint to add other manufacturers and/or dealer/distributors as discovery unfolds and full responsibility for the boycott is uncovered.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

approximately Two Hundred and Twenty-Five Million Dollars ($225,000,000) at the Manufacturer level and Six Hundred Fifty Million Dollars ($650,000,000) at the Dealer/Distributor level, annually, in the relevant geographic market.

## THE DRIP AND MICRO-IRRIGATION BUSINESS
## AND ITS IMPACT ON COMMERCE

8. "Drip irrigation" and "Micro-irrigation," mean and involve the process of delivering low volumes of water and sometimes nutrients directly to the root systems of growing plants, as distinguished from irrigation by flooding or sprinkler systems. Drip and micro-irrigation are designed, among other things, to reduce water waste, to increase crop yields, and to reduce the use of nutrients. Drip and micro-irrigation systems, particularly when used in large agricultural applications, require the integration of numerous components, including pumps, filters, drip tapes, drip hoses or tubing, fittings, valves, emission devices, fertilizer injectors, regulators, controllers, and soil moisture monitors and sensors.

9. Since 2007, the United States market for manufactured parts and supplies used in the drip and micro-irrigation sales has grown from approximately $300,000,000 per year to nearly $400,000,000 per year. More than half of this market is based in California. In addition to the commerce generated by sales of such systems and components, the use of drip and micro-irrigation systems has a direct and substantial impact on yields and prices of food and other crops that are grown in this district and shipped throughout the world.

## THE PARTIES

10. Plaintiff Jain Irrigation, Inc. ("Jain Irrigation") is a Delaware corporation registered to conduct business in the state of California and having an office at 2851 East Florence Ave., Fresno, CA 93721. Jain Irrigation manufactures and sells a wide variety of drip and micro-irrigation equipment throughout the United States. Jain Irrigation's United States sales of drip and micro-irrigation products have grown steadily from less than $40,000,000 per year in 2007 to approximately $80,000,000 per year in 2017.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

11. Plaintiff Irrigation Design & Construction, LLC ("IDC LLC") is a Delaware limited liability company registered to conduct business in California and having its registered office at 11220 Hwy 33, Patterson, CA 95363. IDC LLC is the successor in interest to the business and assets of Irrigation Design & Construction, Inc. ("IDC Inc."), a California corporation having its office at 11220 Hwy 33, Patterson, CA 95363. IDC LLC and IDC Inc., will be referred to collectively in this complaint as "IDC." IDC is in the business of designing, engineering, fabricating, installing and maintaining agricultural irrigation systems and selling irrigation supplies and parts at seven retail locations serving the Central and Salinas Valleys of California.

12. Plaintiff Agri-Valley Irrigation, LLC ("AVI LLC") is a Delaware limited liability company registered to conduct business in California, having an office at 3168 W. Belmont Avenue, Fresno, CA 093732. AVI LLC is the successor in interest to the business and assets of Agri-Valley Irrigation, Inc. ("AVI Inc."), a California corporation having its office at 3168 W. Belmont Avenue, Fresno, CA 93732. AVI LLC and AVI Inc., will be referred to collectively in this complaint as AVI. AVI is in the business of designing, engineering, fabricating, installing and maintaining agricultural irrigation systems and providing irrigation supplies and parts from six locations serving the Central Valley of California.

13. On or about April 19, 2017, IDC and AVI announced that they had each entered into an agreement to provide equity to a newly formed company, Jain Distribution Holdings, Inc., ("Jain Distribution") funded by Jain Irrigation Systems, Ltd. Although Jain Distribution became an investor and part owner of AVI LLC and IDC LLC, each LLC continued to be managed and operated as an independent dealer/distributor just as it did before Jain Distribution acquired an interest in their respective businesses.

14. Defendant Netafim Irrigation, Inc. ("Netafim") is a New York corporation registered to conduct business in California, having an office at 5470 E. Home Avenue, Fresno, CA 93727. According to its website, Netafim has 28 subsidiaries, 17 manufacturing plants and 4300 employees worldwide. Plaintiffs estimate that Netafim's United States sales of drip and micro-irrigation products

5

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

have gone from a high of approximately $120,000,000 per year in 2009, down to a low of approximately $85,000,000 in 2013, recovering to approximately $105,000,000 in 2017.

15. Rivulis Irrigation, Inc. ("Rivulis") is a California corporation having an office at 7545 Carroll Road, San Diego, CA 92121. According to its website, Rivulis is part of a business entity headquartered in Israel, which has 11 manufacturing facilities in 9 countries and sales, marketing and other staff in more than 100 countries.

16. Eurodrip U.S.A., Inc., ("Eurodrip") is a California corporation, with an office at 1850 W. Almond Avenue, Madera, CA 93637. According to its website, Eurodrip manufactured equipment in Madera, California for drip and micro-irrigation systems.

17. Plaintiffs are informed and believe that as of August 1, 2017, Eurodrip was acquired by and merged into Rivulis.

18. The Toro Company ("Toro") is a Delaware corporation registered to conduct business in California and having its principal office at 8111 Lyndale Avenue S., Bloomington, MN 55420. Toro manufactures and sells a broad line of products for micro-irrigation, including drip tape, dripline, hose and tubing, fittings, emission devices, filters, valves, and controllers. It conducts its business in California at 1588 N. Marshall Avenue, El Cajon, CA 92020.

19. Bowsmith, Inc., ("Bowsmith") is a California corporation having an office at 131 2nd Street, Exeter, CA 93221. Bowsmith is in the business of selling drip emitters, sprinklers, tubing and other equipment manufactured in its facilities in Exeter, CA and Avon Park, FL and equipment manufactured by others, including defendant Netafim.

20. Rain Bird Corporation ("Rain Bird") is a California corporation having an office at 970 W. Sierra Madre Avenue, Suite DIS3, Azusa, CA 91702-1873. According to its website, Rain Bird claims to be the leading global manufacturer and provider of irrigation products and services, selling its irrigation products in more than 20 countries.

21. Landmark Irrigation, Inc. ("Landmark") is a California corporation having its office at 20550 Golden State Blvd, Madera, CA 93637. Landmark is engaged in the design, installation and

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

service of irrigation systems.  According to its website, it is a dealer/distributor of products manufactured by defendant Netafim and by Bowsmith and Toro.

22.    Hydratec, Inc. ("Hydratec") is a California corporation having its office at 325 Road 192, Delano, CA 93215.  According to its website, Hydratec is engaged in the design, installation and service of irrigation systems in California, Florida, Washington, Mexico, China and Nicaragua.

23.    Plaintiffs are informed and believe and thereon allege that, together, Defendant Netafim, along with Rivulis, Toro, Bowsmith and Rain Bird (the "Conspiring Manufacturers") accounted for more than 40% of sales in the United States drip and micro-irrigation market in 2016, and approximately 40% of the United States micro-irrigation market in 2017.

## STRUCTURE OF THE DRIP AND MICRO-IRRIGATION MARKET; MANUFACTURER AND DEALER/DISTRIBUTOR RELATIONSHIPS

24.    Manufacturers of drip and micro-irrigation equipment and parts, like the Conspiring Manufacturers herein, generally do not sell their products directly to end users (i.e., growers) in the California market.  Instead, the market at the dealer/distributor level consists of a number of dealer/distributors that design and install drip and micro-irrigation systems for end user growers and farmers.  These systems typically involve components made by multiple manufacturers, and the dealer/distributors typically acquire such products directly from manufacturers or other dealer/distributors.  Dealer/distributors are not required to purchase the products of a single manufacturer exclusively, nor are manufacturers prohibited from selling to many dealer/distributors in the same area or market.  Nor are dealer/distributors prohibited from selling manufacturer products to each other.

25.    Within the Central and San Joaquin Valleys of California, it has been the customary practice for many years that the vast majority of contracts for the design and installation of irrigation systems for growers are awarded through a competitive bidding process, wherein the customer specifies the manufacturer(s) of the irrigation equipment that it wants to have installed, and the dealer/distributor who is awarded a contract makes arrangements to obtain the specified parts and components of the specified system from the specified manufacturer or from another dealer.  It has also been customary

7

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

that most growers specify different manufacturers as the suppliers of different parts or components of a new irrigation system.  For example, a grower specification might call for pipe from Manufacturer A, emitters from Manufacturer B, filters from Manufacturer C, etc.  Because this practice has existed for years and now characterizes much of the market for system installations, growers expect that a winning bidder will obtain the specified parts and components if it wishes to bid.  Conversely, if a dealer/distributor is precluded from obtaining the products of a specified manufacturer, that dealer/distributor may be unable to submit a bid that meets the specifications of the grower.

26.    Because the Conspiring Manufacturers are among the largest producers of micro and drip irrigation equipment, some of their products are specified in nearly every bid invitation issued by large growers in the Central and San Joaquin Valleys.  This means that plaintiffs AVI and IDC, which design and install irrigation systems throughout these areas, are either precluded as a direct result of the group boycott from bidding at all for new systems or are forced to submit bids that do not meet the needs of the grower.  If Plaintiffs are unable to supply the products of any of the Conspiring Manufacturers, or are able to supply such products only on less favorable terms than other dealer/distributors or installers, Plaintiffs are effectively prohibited from submitting bids that will compete with those of other dealer/distributors and installers.  A refusal by the Conspiring Manufacturers to supply their products to Plaintiffs AVI and IDC thus, limits the number of bidders, interferes with the competitive bidding process, limits grower choices and raises prices for growers.

## DEFENDANTS' BOYCOTT TO ELIMINATE JAIN, AVI AND IDC

27.    Prior to April 2017, IDC and AVI were treated as dealers/distributors for the products of each of the Conspiring Manufacturers, and were provided with the competitive advantages and benefits accorded to all dealer/distributors of such products.

28.    In or about April 2017, Defendant Netafim and others, including at least the Conspiring Manufacturers, began to form and enter expressly or tacitly into a conspiracy pursuant to which each entity agreed to and did engage in a collective refusal to deal or group boycott of IDC and AVI.  In furtherance of the group boycott, each of the Conspiring Manufacturers terminated its prior relationship with IDC and AVI, refusing to supply any further products to either company, and thus, foregoing the

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

profit that that such manufacturer would naturally secure in the event a bid were awarded to AVI or IDC.

29.    In or about April, 2017, as part of and pursuant to the same conspiracy in restraint of trade, the Conspiring Manufacturers agreed with an unknown number of dealer/distributors (including at least Landmark and Hydratec) that, in exchange for the Conspiring Manufacturers' agreement to boycott AVI and IDC, such dealer/distributors would engage in a group boycott or collective refusal to deal with Jain Irrigation by reducing or terminating their purchases of products manufactured by Jain Irrigation.  This arrangement was intended to and is having the effect of limiting competition between AVI and IDC and other dealer/distributors and between Jain and other manufacturers.

### Netafim Seeks to Recruit Manufacturers to Join the Boycott

30.    Defendant Netafim was the instigator of the conspiracy and sought to recruit other manufacturers to join the conspiracy.  In particular, following the April 19, 2017 announcement, Defendant Netafim's president telephoned an executive of Fresno Valve & Casting ("Fresno Valve") (a manufacturer of irrigation equipment and a direct competitor of both Netafim and Jain).  Netafim's president told the Fresno Valve executive, in substance, that the Jain investment in AVI and IDC "broke the rule" which prohibited manufacturers from selling directly to growers, and he asked the Fresno Valve executive to join Netafim to stop this violation of the "rule."  The Fresno Valve executive did not agree to join the boycott, and, after speaking to executives at AVI and IDC and confirming their intention and ability to continue to act independently, he advised them that Fresno Valve would not cut off sales to them.  In fact, there is no "rule" prohibiting manufacturers from dealing with growers, nor should there be.

31.     Within a few days after the telephone call from Netafim's president to Fresno Valve, Netafim announced publicly and informed Plaintiffs IDC and AVI that it was terminating its relationship with such plaintiffs, that they would no longer be considered or treated as dealer/distributors of Netafim products, and that Netafim would no longer accept orders from Plaintiffs AVI and IDC.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

32. Pursuant to the conspiracy, in or about May 2017, Rivulis informed Plaintiffs AVI and IDC that it was terminating its distribution relationship with them and, as of May 31, 2017 would not accept any new orders from them.

33. Pursuant to the conspiracy, in or about June 2017, Toro informed Plaintiffs AVI and IDC that it was terminating Toro's relationships with AVI and IDC.

34. Pursuant to the conspiracy, in or about May 2017, Rain Bird informed Plaintiffs that it would not set up accounts for the new entities AVI LLC and IDC LLC, although it knew that these entities were the successors in interest to the business and assets of AVI Inc., and IDC Inc., and that AVI Inc., and IDC Inc., had been dealer/distributors of Rain Bird products for many years.

35. In or about May 2017, Bowsmith terminated the dealership status of AVI and IDC.

**Conspiring Dealer/Distributors Pressure Manufacturers to Join the Boycott**

36. Pursuant to the conspiracy, Defendant Netafim's co-conspirator dealer/distributors sought to and did coerce and/or bribe other manufacturers and suppliers of drip and micro-irrigation equipment to cease doing business with IDC and AVI. In particular, for a number of months after Fresno Valve refused to join the boycott of AVI and IDC, Fresno Valve was under a "significant amount of pressure" from dealer/distributors to stop selling to AVI and IDC. Such pressure was exerted by dealer/distributors in discussions with the Fresno Valve executives and its sales staff. The dealer/distributors had direct and express discussions with Fresno Value executives in which they stated in substance that "you are either with us or against us." The pressure on Fresno Valve was particularly significant because the dealer/distributors apparently realized that, while AVI and IDC might have other sources for many products, Fresno Valve was virtually their only source for filters, so if the dealer/distributors could recruit Fresno Valve to cut off AVI and IDC, it would "cripple" them. The conspiring dealer/distributors stated and implied that if Fresno Valve did not join them and cut off AVI and IDC, the dealer/distributors would shun Fresno Valve products.

37. Pursuant to the conspiracy, representatives of Bowsmith, which is both a manufacturer and a dealer/distributor, also visited Fresno Valve executives several times to suggest that it would be

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

better to cut off AVI and IDC and cave to the pressure from the conspiring dealer/distributors instead of continuing to sell to AVI and IDC.

**Netafim and Conspiring Dealer/Distributors Pressure Other Dealer/Distributors Not to Assist AVI and IDC to Obtain Products; Netafim Pressures Growers Not to Deal With AVI**

38.    In furtherance of the conspiracy, Netafim and its co-conspirators warned and threatened dealer/distributors that their own access to their own products would be terminated if such dealer/distributors engaged in "two-step" transactions by which such dealer/distributors would purchase products from one or more of the Conspiring Manufacturers and then resell such products to AVI and IDC.   Such "two-step" transactions have been an accepted way of doing business for more than thirty years and have allowed dealer/distributors who have favorable price terms from the manufacturers to pass on those pricing advantages to other dealer/distributors outside of their territories, and sometimes within their territories, thus enhancing competition.   Resale restrictions prohibiting such "two-step" transactions were unprecedented prior to the conspiracy alleged herein.

39.    In particular, in or about June 2017, J.G. Boswell ("JGB"), a grower, invited bids (due on June 27, 2017) for an irrigation system for a new pistachio grove.  The bid invitation allowed bids to include either Jain or Netafim hose, but required Netafim emitters (i.e., no substitutions were permitted for the emitters).  Melissa Lilze, Netafim sales manager, told JGB's Irrigation Manager that if JGB got Netafim products from AVI, Netafim would not honor the warranty; that any dealer/distributor who two-steps Netafim products to AVI will be dropped immediately; that dealers/distributors are not allowed to include any Jain products in their bids; and that dealer/distributors are not allowed to bid Netafim emitters with Jain hose (although JGB's bid invitation allowed them to do so).

40.    In response to the boycott, AVI arranged to buy some Netafim product from another dealer/distributor through a Two-Step process.  When Netafim learned that dealer/distributor RDO Water ("RDO") had defied Netafim and two-stepped Netafim emitters to AVI for use in the JGB transaction, Todd Rinkenberger, Netafim Sales Manager, called and berated and scolded the RDO representative.  The RDO representative then told AVI that RDO and AVI would have to develop a better, more elaborate and surreptitious strategy for getting Netafim product into the hands of AVI

11

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

customers, because Netafim was "watching him like a hawk" and tracking everything that RDO was doing.

41.    On June 28, 2017, JGB's Irrigation Manager told AVI that AVI was the low bidder for the JGB job but would get only half the project because of all the "turmoil" that resulted from JGB dealing with AVI and because of JGB's concerns about the security and logistics of having to two-step Netafim emitters from another dealer.  JGB did not give AVI an opportunity to bid on a subsequent project because AVI was reputed to be "out of the game."

42.    After the boycott started, AVI was discussing warranty claim handling with a sales representative from Rivulis.  The Rivulis representative invited the AVI representative to lunch.  At lunch, the Rivulis representative stated that Rivulis projected a loss of twenty percent (20%) of its business due to the boycott, but that it turned out that the business loss was much more than expected. The Rivulis representative volunteered that "Netafim started this whole thing"; that Netafim was the "ring leader" that had approached Rivulis and asked Rivulis to "join them in cutting off Jain" for the purpose of hurting Jain because Jain had "crossed the line" by getting into the dealer level market; that Netafim had been calling other "suppliers" and asking them not to sell to AVI or IDC so that AVI and IDC would only have Jain to buy from, and that Netafim and Rivulis intended to cost AVI and IDC business because AVI and IDC would not be able to sell to any customer that wanted Rivulis or Netafim products.

**Netafim Hosts a Meeting of Conspiring Dealer/Distributors**

43.    Pursuant to the conspiracy, defendant Netafim and its co-conspirators recruited other dealer/distributors to threaten to cut off business from any manufacturers that continued to sell to AVI and IDC.   In particular, Netafim brought many of the California dealer/distributors to a meeting in Washington State in or about August 2017 and took the unusual step of paying their travel expenses for the meeting.  At the meeting and/or in discussions surrounding the meeting, the dealer/distributors discussed strategies to "take out" AVI and IDC and agreed that dealer/distributors were expected to work together to damage AVI and IDC.   Some dealer/distributors who were particularly vocal were Carl Carlson (Western AG & Turf, Inc., Madera, CA); Gene Martinez (Alsco-

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

Geyer Irrigation, Inc., Arbuckle, CA); and Russ Spain (CEO of Landmark).   Other dealer/distributors whose representatives attended such meeting, in addition to Landmark, Hydratec, Alsco Geyer and Western AG and Turf, included at least the following: CalWest Rain Inc. (Kerman, CA); Durham Pump, Inc. (Durham, CA).; Watson Ag Irrigation (Caruthers, CA).

### Other Acts In Furtherance of the Group Boycott Conspiracy

44.    Pursuant to and in furtherance of the conspiracy, representatives of Netafim attempted to recruit specific Jain Irrigation customers, including, for example, DripWorks, Inc., (a retail provider of irrigation products to the home consumer market) to "join the war against Jain."

45.    Pursuant to and in furtherance of the conspiracy, Netafim offered dealer/distributors a "blank check" for any job they could take from Jain west of Highway 99, and a special 8% rebate or bounty on business taken by them from AVI or IDC.

46.    Pursuant to and as a result of the conspiracy, Lakos, a Jain supplier of sand filtration media, cut off sales to Jain because of complaints by dealer/distributors about Lakos' sales to Jain.

47.    Conspiring dealer/distributors sought to persuade Advanced Water Products, a manufacturer of irrigation system components located in Porterville, CA, not to sell to IDC.

48.    Pursuant to the conspiracy, the Conspiring Manufacturers refused to compensate AVI and IDC for providing warranty services on products of the Conspiring Manufacturers, although they customarily provide such compensation to their dealer/distributors.

49.    Pursuant to the conspiracy, the Conspiring Manufacturers and many of the conspiring dealer/distributors sought to and did damage the reputation and business of IDC and AVI by telling potential customers that IDC and AVI would be unable to supply products and that product warranties would be void if AVI or IDC sold products manufactured by the Conspiring Manufacturers.  In particular, in or about June 2017, the president of Annonson Sprinkler Company wrote to Annonson's customers stating that AVI and IDC were "unable to purchase from a number of manufacturers," listing Netafim, Eurodrip, Rivulis and Bowsmith, and implying that AVI and IDC could not be relied upon to supply products to their customers.

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

13

50.     Pursuant to the conspiracy, or by reason of threats or pressure from the Conspiring Manufacturers, the following customers of Jain Irrigation have terminated or substantially reduced their purchases of products from Jain Irrigation: Annonson Sprinkler Company (Madera, CA); Alsco-Geyer Irrigation, Inc. (Arbuckle, CA); Bennett & Bennett Irrigation Systems (Selma, Lemoore and Shafter, CA);  CalWest Rain Inc. (Kerman, CA); Durham Pump, Inc. (Durham, CA);  Hydratec (Delano, CA); Lodi Pump & Irrigation (Lodi and Corning, CA); Pacific Southwest Irrigation (Stockton, CA); Reedley Irrigation Supply Co. (Reedley, CA)  RDO Equipment Co., d/b/a RDO Water;  Waterford Irrigation Supply Inc. (Atwater, CA); Watson Ag Irrigation (Caruthers, CA); and Western AG & Turf, Inc. (Madera, CA).

51.     Pursuant to and as a result of the conspiracy, Jain Irrigation's sales to the customers named in the preceding paragraph since the formation of the conspiracy have declined by more than $900,000 compared to sales for the comparable period one year earlier.

52.     By terminating their dealership relationships with Plaintiffs AVI and IDC, and by refusing to deal with Plaintiffs, Defendant Netafim and its co-conspirators deprived Plaintiffs of the ability to bid competitively for jobs, called into question Plaintiffs' ability to service warranty claims on Defendant's products previously sold and installed by Plaintiffs, damaged Plaintiffs' reputation in the market for drip and micro-irrigation products, and required Plaintiffs to replace the inventories of the Conspiring Manufacturers' products carried in Plaintiffs' retail stores with products from other manufacturers.

53.     By terminating their dealership relationships with Plaintiffs AVI and IDC, and by refusing to deal with Plaintiffs, Defendant Netafim and its co-conspirators deprived growers of the opportunity to receive competitive bids on irrigation projects, and of the opportunity, in seeking bids or quotations, to specify parts and components that they consider most suitable for their projects, or that they prefer to use based on prior experience.  Because Plaintiffs AVI and IDC are prohibited from including products of the boycotting Conspiring Manufacturers in their bids or designs, and because the boycotting dealer/distributors refuse to include products of Jain Irrigation in their bids or designs,

14

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

growers have been deprived of competitive bids and product choices, and competition in the market for drip and micro-irrigation products has been restrained.

## COUNT I

### (Against Defendant Netafim For Damages

### Pursuant to 15 U.S.C. § 15 For Violation of 15 U.S.C. § 1)

54.    Plaintiffs repeat and reallege each and every allegation made in paragraphs 1 through 53 above with the same force and effect as if set forth at length herein.

55.    15 U.S.C. § 1, provides that, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, is declared to be illegal."  15 U.S.C. § 15 provides that any person injured by a violation of the antitrust laws may sue therefor and "shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

56.    By reason of the foregoing, Defendant has illegally conspired to restrain trade or commerce.  Such conduct has damaged Plaintiffs AVI, IDC and Jain Irrigation by depriving them of the opportunity to make bids, proposals and sales, and has had a substantial impact on interstate commerce in drip and micro-irrigation products and in agricultural products grown using such irrigation products and has substantially lessened competition in such lines of commerce.  The anti-competitive effects of the co-conspirators' conduct outweigh any pro-competitive effects.

57.     Plaintiffs are entitled to an award of three times the damages sustained by them, in an amount not less than Twenty-Five Million Dollars ($25,000,000) or according to proof at trial, together with the costs of suit including a reasonable attorney's fee.

## COUNT II

### (Against Defendant For Injunctive Relief to Restrain Violations of 15 U.S.C. Section 1)

58.    Plaintiffs repeat and reallege each and every allegation made in paragraphs 1 through 57 above with the same force and effect as if set forth at length herein.

59.    Defendant Netafim has continued and will continue, unless enjoined and restrained, to violate the antitrust laws as set forth above.  Such continuing violations have caused and threaten to

continue causing irreparable loss and damage to Plaintiffs by depriving them of the opportunity to make bids, proposals and sales, and such violations will have a continuing substantial impact on interstate commerce in drip and micro-irrigation products and in agricultural products grown using such irrigation products and will continue to substantially lessen competition in such lines of commerce.  The anti-competitive effects of Defendant Netafim's conduct outweigh any pro-competitive effects.

60.    Despite its monetary damage claims, Plaintiffs have no adequate remedy at law to redress fully the injuries to its business and reputation currently being suffered or which will result in the future from Defendant Netafim's continued wrongful conduct.

61.    Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendant Netafim and all persons acting in concert with them or under their control from engaging in the conduct complained of in this complaint.

### COUNT III

### (Against Defendant For Damages For Violation Of

### California Business And Professions Code §§ 16720 And 16726)

62.    Plaintiffs repeat and reallege each and every allegation made in paragraphs 1 through 61 above with the same force and effect as if set forth at length herein.

63.    As set forth in this complaint, Defendant Netafim and its co-conspirators have created and carried out restrictions in trade or commerce unlawful under California Business and Professions Code §§ 16720 and 16726.

64.    California Business and Professions Code § 16750 provides, in relevant part, that "any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor . . . and to recover three times the damages sustained by him or her, interest on his or her actual damages . . . and preliminary or permanent injunctive relief."

65.    By reason of the foregoing, Defendant Netafim and its co-conspirators have illegally conspired to restrain trade or commerce.  Such conduct has damaged Plaintiffs AVI, IDC and Jain Irrigation by depriving them of the opportunity to make bids, proposals and sales, and has had a substantial impact on interstate commerce in drip and micro-irrigation products and in agricultural

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

16

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

products grown using such irrigation products and has substantially lessened competition in such lines of commerce.  The anti-competitive effects of such conduct outweigh any pro-competitive effects.

66.   Plaintiffs are entitled to an award of three times the damages sustained by them, in an amount not less than Twenty-Five Million Dollars ($25,000,000) or according to proof at trial, together with the costs of suit including a reasonable attorney's fee.

**COUNT IV**

**(Against Defendant For Injunctive Relief to Enjoin Violation of**

**California Business And Professions Code   §§ 16720 And 16726)**

67.   Plaintiffs repeat and reallege each and every allegation made in paragraphs 1 through 66 above with the same force and effect as if set forth at length herein.

68.   Defendant has continued and will continue, unless enjoined and restrained, to violate the antitrust laws as set forth above.  Such continuing violations threaten continuing and irreparable loss and damage to Plaintiffs by depriving them of the opportunity to make bids, proposals and sales, and such violations will have a continuing substantial impact on interstate commerce in drip and micro-irrigation products and in agricultural products grown using such irrigation products and will continue to substantially lessen competition in such lines of commerce.  The anti-competitive effects of Defendants' conduct outweigh any pro-competitive effects.

69.   Despite its monetary damage claims, Plaintiffs have no adequate remedy at law to redress fully the injuries to its business and reputation currently being suffered or which will result in the future from Defendant Netafim's continued wrongful conduct.

70.   Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants and all persons acting in concert with them or under their control from engaging in the conduct complained of in this complaint.

**COUNT V**

**(Against Defendant For Interference With Prospective Economic Relations)**

71.   Plaintiffs repeat and reallege each and every allegation made in paragraphs 1 through 70 above with the same force and effect as if set forth at length herein.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM

72.    For many years, AVI and IDC have been trusted and successful dealer/distributors and installers of the products of Netafim and the other Conspiring Manufacturers, and Jain has been a trusted manufacturer of irrigation products.  Plaintiffs AVI and IDC have developed reputations and relationships with growers for reliably and professionally designing and installing irrigation systems that comply with growers' needs and specifications and that use components from many different manufacturers, including Jain and the Conspiring Manufacturers.  By reason of such reputations and relationships Plaintiffs IDC and AVI have had, and, absent the unlawful conspiracy described here, would continue to have significant competitive advantages over other designers and installers, and Jain has had and, absent the unlawful conspiracy described here, would continue to have significant competitive advantages over other manufacturers.

73.    By reason of the unlawful conspiracy, the reputations of AVI, IDC and Jain have been damaged in the marketplace, and growers have excluded them from bidding on projects that they would have otherwise obtained.

74.    Defendant's conduct was intentional, wrongful, malicious, and despicable and carried out by Defendant Netafim and its co-conspirators with a willful and conscious disregard for the rights or safety of others.  As a result, damages should be awarded against Defendant for the sake of example and by way of punishing it, in an amount to be proven.

WHEREFORE, Plaintiffs pray for judgment:

A.    On Counts I and III for damages according to proof, and that said sum be trebled; together with the costs of suit including a reasonable attorney's fee;

B.    On Count V for damages according to proof together with exemplary damages and attorney's fees pursuant to California Civil Code §§ 3426.3 and 3426.4;

C.    On Counts II and IV preliminarily and permanently enjoining defendant, its officers, agents and employees and all persons acting in concert with them or under their control, from joining, conspiring, agreeing or combining with any person or entity, or coercing, threatening, bribing or inducing by any means any person or entity to refuse to deal with, sell to or purchase goods or services from Plaintiffs; and

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

18

D.     For such other and further relief as the Court may deem just and proper.

Dated: January 7, 2019                                     Respectfully Submitted,

                                                          LAW OFFICES OF A. PETER RAUSCH, JR.


                                                          By: /s/ A. Peter Rausch, Jr.
                                                          A. PETER RAUSCH, JR.
                                                          Attorneys for Plaintiffs,
                                                          Jain Irrigation, Inc.,
                                                          Agri-Valley Irrigation, LLC, and
                                                          Irrigation Design & Construction, LLC


## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs Jain Irrigation, Inc., Agri-Valley Irrigation, LLC, and Irrigation Design & Construction, LLC as to all issues so triable.

Dated: January 7, 2019                                     Respectfully Submitted,

                                                          LAW OFFICES OF A. PETER RAUSCH, JR.


                                                          By: /s/ A. Peter Rausch, Jr.
                                                          A. PETER RAUSCH, JR.
                                                          Attorneys for Plaintiffs,
                                                          Jain Irrigation, Inc.,
                                                          Agri-Valley Irrigation, LLC, and
                                                          Irrigation Design & Construction, LLC

Law Offices of A. Peter Rausch, Jr.
1930 Tienda Drive, Suite 106, Lodi, CA 95242

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Jain v Netafim*: USDC, Eastern District of California, Case No. 1:18-CV-01331-DAD-BAM